Vol. 2-118

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION


| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Cause No. |
| Plaintiff, | ) | 1:18-mj-0776 |
| | ) | Indianapolis, Indiana |
| vs. | ) | **August 22, 2018** |
| | ) | 12:48 p.m. |
| NOLAN BREWER, | ) | |
| | ) | **VOLUME II** |
| Defendant. | ) | |


**Before the Honorable
MARK J. DINSMORE**

OFFICIAL REPORTER'S TRANSCRIPT OF
DETENTION HEARING


**For Plaintiff:**                    Nicholas Linder, Esq.
                                      Assistant U.S. Attorney
                                      United States Attorney's Office
                                      Suite 2100
                                      10 West Market Street
                                      Indianapolis, IN  46204


**For Defendant:**                    Harold Samuel Ansell, Esq.
                                      Suite 900
                                      156 East Market Street
                                      Indianapolis, IN  46204




Court Reporter:                       David W. Moxley, RMR, CRR, CMRS
                                      United States District Court
                                      46 East Ohio Street, Room 340
                                      Indianapolis, Indiana  46204

PROCEEDINGS TAKEN BY AUDIO RECORDING
TRANSCRIPT CREATED BY COMPUTER-AIDED TRANSCRIPTION

Vol. 2-119

1                        (In open court.)

2              THE COURT:  It is 12:48 p.m., Wednesday, August 22,

3  2018.  We're here on the matter of the United States versus

4  Nolan Brewer, 1:18-mj-776.  For the United States, Nick

5  Linder; for the defendant, Sam Ansell; the United States

6  Probation Office, Ryan Harrold.  This is United States

7  Magistrate Judge Mark J. Dinsmore.  The record is electronic.

8  We are here for a continuation of the detention hearing that

9  began yesterday.

10             Mr. Brewer, I'll again remind you, you have the

11  right to remain silent.  Anything you say can and may be used

12  against you.  If you've made a statement in the past, you have

13  the right to make no further statements.  If you begin to make

14  a statement, you may stop at any time.  Your right to remain

15  silent applies to any statement of any kind, including

16  out-of-court statements to the United States Marshals, the

17  United States Attorneys, or anyone else.  If you do decide to

18  make a statement, you have the right to have your counsel

19  present when that statement is made.

20             You have the right to counsel.  That right applies

21  at every critical step of these proceedings against you.  You

22  always have the right to hire counsel at your own expense.  If

23  you cannot afford to hire counsel, counsel will be appointed

24  for you.  In this case, the Court has appointed Mr. Ansell to

25  represent you in this matter.

Vol. 2-120

1          And I'd just like to ask you a few questions --

2    could you hit that button -- to make sure you have the ability

3    to understand today's proceeding.  How old are you, sir?

4          THE DEFENDANT:  I am 20 years old.

5          THE COURT:  And how many years of schooling have you

6    completed?

7          THE DEFENDANT:  A high school diploma and an

8    associate's degree.

9          THE COURT:  All right.  Are you able to read and

10   write the English language?

11         THE DEFENDANT:  Yes.

12         THE COURT:  Are you currently under the influence of

13   any medication or other substance that could affect your

14   ability to understand today's proceeding?

15         THE DEFENDANT:  No.

16         THE COURT:  All right.  So yesterday we concluded

17   the presentation.  Mr. Linder, is there anything that was

18   omitted from the United States' presentation that you'd like

19   to supplement at this time?

20         MR. LINDER:  No, Your Honor.

21         THE COURT:  Mr. Ansell, the same question for the

22   defendant.

23         MR. ANSELL:  No, Your Honor.

24         THE COURT:  All right.  The presentation yesterday

25   focused primarily on the acts that are charged.  It's

1  difficult to describe them in any way other that despicable.

2  And I can understand the emotion attached from the

3  government's perspective, but I'm constrained in this hearing

4  by the law, and the law provides that the judicial officer

5  shall order the pretrial release of the defendant unless the

6  government demonstrates, in this case by clear and convincing

7  evidence, that there are no conditions or combination of

8  conditions of release that are adequate to protect the safety

9  of any other person in the community.  So that's what has to

10  be demonstrated.  That was the government's burden.

11          The factors to be considered in addressing the

12  motion are set forth in 18 United States Code, Section

13  3142(g), the nature and circumstances of the offense charged,

14  including whether the offense is a crime of violence or

15  involves a narcotic drug.  I've already described my view of

16  the offense, but it is not a crime of violence and it does not

17  involve a narcotic drug.

18          The weight of the evidence against the person, I

19  think even Mr. Ansell admitted, is strong in this case given

20  the defendant's admissions.  So that certainly weighs in

21  favor.

22          The other factors to be considered, however, almost

23  uniformly do not.  A person's character, physical or mental

24  condition, I will acknowledge that, given the offense, there

25  are serious questions about the defendant's character and

Vol. 2-122

1  mental condition, but I'm not sure that those weigh

2  significantly in favor of detention.  His family ties, as

3  evidenced by the numerous people that have come to support him

4  and his family, are clearly strong.

5         He's employed, he was working full time.  In fact,

6  he was working more than full time at the time of his arrest.

7  I don't think he has significant -- there's no evidence of

8  significant financial resources.  That's primarily an issue of

9  whether that would fund flight, and there's really -- the

10  motion is not based on a risk of flight.  He's a lifetime

11  resident of the community, he clearly has community ties.  As

12  the evidence presented, he has ties to his church.

13         With regard to past conduct, there isn't any.

14  There's no criminal history, there's no history of drug or

15  alcohol abuse.  There's no record concerning appearance at

16  court proceedings, because there's no record that there ever

17  was a court proceeding before.

18         And the last factor is whether the current offense

19  was committed while the person was on probation or parole.

20  And, obviously, he was not.

21         So, other than the fact that the evidence appears

22  pretty strong that the crime charged was committed, the

23  government's presentation really didn't move the ball any

24  further than that.  And so the question is, are there

25  conditions of release that would be adequate to protect the

Vol. 2-123

 1 safety of the community or any other person?  And I find that

 2 there are in this circumstance, so the United States' motion

 3 is denied and I will issue an order setting conditions of

 4 release.

 5         Mr. Linder, does the United States wish to appeal my

 6 decision?

 7         MR. LINDER:  Your Honor, we have consulted with the

 8 office, and, yes, the United States does intend to appeal this

 9 decision.

10         THE COURT:  All right.

11         MR. LINDER:  We would move that the defendant remain

12 in custody for a period of whatever the Court feels reasonable

13 to be able to file our notice of appeal and subsequent brief.

14         THE COURT:  All right.  Can you do that within 48

15 hours?

16         MR. LINDER:  Yes, Your Honor.

17         THE COURT:  All right.  So I will issue the order,

18 the conditions of release, but I will retain Mr. Brewer in

19 custody until I order him released.

20         Is Mr. Brewer here?  Oh, there you are.  I'm not

21 wearing my glasses, so...

22         All right.  So, for the record, this is the

23 defendant's father, Jeffrey Brewer, that I've placed on the

24 record.  He testified during the hearing yesterday.

25         Mr. Brewer, you offered to allow your son to move

Vol. 2-124

1  back into your home while he's on release?

2          MR. JEFFREY BREWER:  Yes, indeed.

3          THE COURT:  If my decision is not overturned, it

4  would be my preference that I place him directly into your

5  custody.  Is that acceptable to you?

6          MR. JEFFREY BREWER:  Yes, it is.

7          THE COURT:  All right.  And you're willing to accept

8  custody of him?

9          MR. JEFFREY BREWER:  Yes.

10         THE COURT:  All right.  So I have prepared a draft

11 order setting conditions that I'll circulate to counsel.  And

12 you can review it and then we can discuss any issues you may

13 have with it, other than the fact that -- we'll go off the

14 record.

15         (Off the record.)

16         THE COURT:  All right.  It is 1:06 p.m., Wednesday,

17 August 22.  We are back on the record in United States versus

18 Nolan Brewer.

19         The Court prepared a proposed order setting

20 conditions of release and circulated to counsel.

21         Mr. Linder, have you had an opportunity to review

22 the Court's proposed order?

23         MR. LINDER:  We have, Your Honor.

24         THE COURT:  Does the United States have any

25 objections or proposed changes thereto?

1          MR. LINDER:  Yes, Your Honor, several.

2          THE COURT:  All right.

3          MR. LINDER:  First, in paragraph 6, and perhaps this

4    information will be gathered later, but the address of Jeffrey

5    Brewer be included.  I think it's important that the defendant

6    be confined to a particular location.

7          THE COURT:  Mr. Brewer's address is in the PS3.

8    Rule 5.2 -- this document gets filed on the docket.  Rule 5.2

9    would prohibit that personal information --

10         MR. LINDER:  Fair enough.

11         THE COURT:  -- from being included.

12         MR. LINDER:  Understood.

13         Secondly, with regard to 7-G, which is the no

14   contact order.

15         THE COURT:  Yes.

16         MR. LINDER:  The United States would include or

17   propose some additional clarification, language to clarify, as

18   well as some additional persons, which I would suppose also be

19   clarification given the fact that there's no contact to be

20   with witnesses or victims, but we would include -- currently

21   it says, "including any codefendants or potential

22   codefendants."

23         The United States would ask to include, comma,

24   "including the co-conspirator in this investigation" -- I'm

25   sorry, "in the instant offense, any members of the

1  Congregation Shaarey Teffilla, and any individual which --

2  with which the defendant has discussed Nazism, antisemitism,

3  and/or the facts of the instant offense."

4          THE COURT:  "And/or the events of the instant

5  offense"?

6          MR. LINDER:  "Events or facts of the incident."

7          THE COURT:  Okay.

8          MR. LINDER:  "Or discussed the incident -- instant

9  offense."

10         THE COURT:  Read your last phrase again.

11         MR. LINDER:  "Any" --

12         THE COURT:  After "antisemitism."

13         MR. LINDER:  "Discussed Nazism, antisemitism, or the

14  facts of the instant offense."

15         THE COURT:  Okay.

16         MR. ANSELL:  Judge, may I speak to that?

17         THE COURT:  Just a second.  Let me write it down

18  first.

19             Read it to me one more time.

20         MR. LINDER:  From its entirety?

21         THE COURT:  Yeah.

22         MR. LINDER:  All right.  It currently says,

23  "including any codefendants or potential defendants."  And we

24  would add, comma, "including the co-conspirator in the instant

25  offense, any members of the Congregation Shaarey Teffilla,

1   and/or -- and any individuals with which the defendant has

2   discussed Nazism, antisemitism, or the facts of the instant

3   offense."

4            THE COURT:  Mr. Ansell?

5            MR. ANSELL:  Judge, my concern is that the

6   government presented testimony that the FBI had interviewed

7   two coworkers with whom the defendant had allegedly spoken

8   about this case.  And I can understand concern about

9   discussing the case with them, as -- with them being potential

10  witnesses, but I think that it's overbroad to just order that

11  he not have any contact with them, because that would require

12  him to forego his employment.

13           THE COURT:  Okay.  Mr. Linder?

14           MR. LINDER:  Your Honor, they are absolutely

15  essential witnesses in the offense charged.  First of all, the

16  coworkers that he spoke with talked about him showing actual

17  photos or talking with them about the precise facts that

18  occurred.  They are witnesses that the government would call

19  at trial.

20           Moreover, he would talk with them about, to the

21  extent antisemitism and Nazism, he discussed that with them,

22  as we heard testimony about that yesterday, goes directly to

23  an element of the offense, which is that he committed these

24  acts because of the race and religion of the Jewish people.

25  So they are the folks that were interviewed yesterday, as well

Vol. 2-128

1  as, frankly, any other coworkers or otherwise that have --

2  that the defendant has discussed those particular views with

3  would certainly be witnesses at trial.

4          And to the extent this defendant is still employed

5  at these locations, we do not know to what extent -- you know,

6  this offense involved some, as Your Honor noted, some

7  despicable, and the government would proffer, you know,

8  intimidating and threatening acts.  The potential for

9  witnesses to be intimidated here is there, so the no

10 contact -- or especially for those individuals that the agents

11 have talked with seems certainly reasonable in this case.

12         THE COURT:  I'll add the changes requested by the

13 United States, but I will include this parenthetical at the

14 conclusion of them.  "However, this paragraph shall not

15 prohibit Defendant from interacting with coworkers for work

16 purposes only.  However, Defendant shall not discuss any facts

17 relating to this case with those individuals."

18         MR. ANSELL:  Thank you, Judge.

19         (Off the record.)

20         THE COURT:  We're going to add that after U.  We're

21 going to add it at the end.

22         MR. LINDER:  Would you mind reading that one more

23 time, Your Honor?  I don't think I caught all of it.  I'm

24 sorry.

25         THE COURT:  It's everything that you had --

1           MR. LINDER:  Right.

2           THE COURT:  -- and then, open paren, "However, this

3    paragraph shall not prohibit Defendant from interacting with

4    coworkers for work purposes only.  However, Defendant shall

5    not discuss any facts relating to this case with those

6    individuals."

7           MR. LINDER:  All right.  Fair enough.

8           THE COURT:  Next?

9           MR. LINDER:  The last condition, U -- I have two

10   more.  One concerns the last condition, U, and then an

11   additional proposal.

12          THE COURT:  Okay.

13          MR. LINDER:  The last condition, U, it's 100 yards.

14   The United States would proffer that it should be 1,000 yards.

15   I really would not want to get into any sort of debate about,

16   well, is it the building?  What is the facility?  You know,

17   the defendant should not be anywhere near these places.

18          THE COURT:  Mr. Ansell?

19          MR. ANSELL:  Judge, the defendant could very well be

20   driving to work or driving to a medical appointment or driving

21   to meet me for a meeting and drive within 1,000 yards of a

22   mosque or a synagogue without knowing it.

23          THE COURT:  That is two-thirds of a mile.

24          MR. LINDER:  Well, I think we could adjust it

25   somewhat, maybe 500 yards.  But, I mean, if he's driving

1  somewhere, he needs to get a map and drive nowhere near these

2  places.

3            THE COURT:  Where he's siting right now, he's within

4  500 yards of someplace that violates this provision, sitting

5  right there, because that's a third of a mile.  I mean, it's a

6  football field.  And my instruction was going to be that if

7  his path to work, where he's going to be allowed to go, drives

8  past a facility that falls within this provision, he needs to

9  come up with a different path to work.  So he's not to go

10 anywhere near one.

11           MR. LINDER:  So where the concern is coming from is,

12 frankly, from the evidence in the case, because he's -- the

13 thing that he burned and spray painted is about 100 yards from

14 the facility designed for worship.  So I just want to be very

15 clear --

16           THE COURT:  Within 200 yards, because my

17 interpretation -- so it's clear, if anybody comes back, my

18 interpretation would be the sign is part of the facility.  So

19 the facility is the property.  So it would be 100 yards from

20 the property, not the sign that's 110 yards from the building.

21           MR. LINDER:  Very well, Your Honor.  Then if the

22 word "facility" may be changed to "property primarily

23 associated with" --

24           THE COURT:  Yes.

25           MR. LINDER:  -- and that the range be changed to

 1  200, that will satisfy the government's interests.

 2            THE COURT:  Mr. Ansell?

 3            MR. ANSELL:  He's going to stay as far away as he

 4  can from anything like that.  He's going to be on GPS

 5  monitoring, so I'm sure any recreational pass-by is going to

 6  be --

 7            THE COURT:  Recorded?

 8            MR. ANSELL:  Recorded, yes.

 9            THE COURT:  All right.  So I'll make it 200 yards

10  and change the word "facility" to "property."

11            MR. LINDER:  Very well.

12            THE COURT:  All right.

13            MR. LINDER:  Lastly, as -- what comes after U?  I

14  should know my alphabet.  A 16-year-old --

15            THE COURT:  V is going to be the one you just added.

16            MR. LINDER:  Okay.

17            THE COURT:  So this will be X, I guess.

18            MR. LINDER:  W.

19            THE COURT:  W.  I can't spell either.

20            MR. LINDER:  The United States requests that the

21  defendant be restricted from using the Internet at all.  And

22  the reason for that is defense counsel himself stated that

23  this defendant is a very impressionable person, his brain is

24  not formally -- fully developed.  He is potentially

25  influenced -- and according to defense counsel, even, was

Vol. 2-132

 1 influenced -- by on-line anonymous users of a social media

 2 platform.

 3          The prospect of this defendant being influenced by

 4 that again, particularly with the testimony we heard

 5 yesterday, that he was sitting over his wife's shoulder

 6 watching this occur, talking about it, and apparently this was

 7 the impetus for this act, that the defendant should be barred

 8 from using any Internet-connected device at all.

 9          THE COURT:  Mr. Ansell?

10          MR. ANSELL:  Your Honor, I think that the best thing

11 for someone who has become misinformed and gone down a path

12 like this is access to correct information.  I think that he

13 still needs to be learning about the world, and I intend to

14 guide him to some sources of information that he can explore

15 to help to open his mind and give him a broader and deeper

16 understanding of the world.  And I think that cutting off

17 access to information is not the answer to this kind of

18 radicalism.  I think helping him to better information and

19 helping him to understand how to think critically is the

20 correct approach.

21          MR. LINDER:  Two responses, Your Honor.  First, this

22 proceeding is not the time to rehabilitate the defendant.

23 This proceeding is about the safety of the victims and the

24 safety of the community.  That argument is irrelevant to this

25 proceeding.  Prohibiting use of the Internet, prohibiting the

Vol. 2-133

1  possibility that this admittedly impressionable individual

2  be -- get the impression from folks on-line is of the utmost

3  priority.

4           Secondly, the people he should be learning that from

5  are the people who testified yesterday, like his father or his

6  pastor or his Sunday school teacher, not the Internet.

7           MR. ANSELL:  I would agree that he should not access

8  any right -- any alt-right or white supremacy or Nazi or

9  Identitarian or anti-immigration sources of information, and I

10 would agree that the government ought to be able to check his

11 Internet history.  But I think that he ought to have access to

12 the Internet.  And, furthermore, he uses the Internet to turn

13 in his time card for work.

14          THE COURT:  Do you have any other proposed changes?

15          MR. LINDER:  No, Your Honor.  That's all from the

16 government.

17          THE COURT:  We'll take a brief recess.

18          (Recess at 1:21, until 1:33.)

19          THE COURT:  All right.  We're back on the record in

20 United States versus Nolan Brewer.

21          (Off the record.)

22          THE COURT:  This is a revised page 3, so you should

23 review the changes to paragraph U.  The new paragraph V, I

24 think, says what we planned.

25          I will deny the request to prohibit him from

1 accessing any Internet-enabled device, but I am agreeable to

2 adding what's marked as paragraphs W and X, which does limit

3 the use of any Internet-enabled device for work purposes.  So

4 I'll give the parties an opportunity to review it and I'll

5 hear any further argument.

6         MR. LINDER:  Your Honor, if I may.

7         THE COURT:  You may.

8         MR. LINDER:  I see the defendant initialing, so

9 before we do that, I just want to --

10         THE COURT:  Sure.

11         MR. LINDER:  Okay.  With regard to the

12 Internet-enabled devices, the language seems to track the

13 typical type of thing that's included in Project Safe

14 Childhood or child exploitation cases, which is

15 understandable.  It does limit the use, I noticed, to -- for

16 the defendant for work?

17         THE COURT:  Yes.

18         MR. LINDER:  That's the only purpose for which he

19 should be using the Internet?  Is that the --

20         THE COURT:  That would be the intent of my order.

21         MR. LINDER:  To the extent, then, that his employers

22 terminate his employment and he has no employment, it would

23 stand to reason, then, that he should not be using the

24 Internet at all; is that correct?

25         THE COURT:  Mr. Ansell?

Vol. 2-135

1          MR. ANSELL:  It seems like a logical inference.

2          THE COURT:  Since I have ordered him -- where's

3  the --

4          MR. LINDER:  To seek employment?

5          THE COURT:  -- to seek employment, he could use it

6  for the purpose of seeking employment if he no longer is

7  employed by where he's at.  Any of his use is subject to the

8  approval of his supervising officer, as well.

9          MR. LINDER:  Very well.

10         THE COURT:  Any further issues for the United

11  States?

12         MR. LINDER:  One moment, Your Honor.

13         THE COURT:  Sure.

14         MR. LINDER:  Your Honor, just a point of

15  clarification.  Does this provision allow only the Pretrial

16  Services officers to conduct such monitoring or may the FBI be

17  permitted to search or seize devices and monitor the

18  defendant's devices?

19         THE COURT:  I think the FBI would be allowed to do

20  that under the same conditions that it's normally allowed to

21  do that.  It could get a warrant.  This is pretrial

22  supervision, this is not criminal investigation.

23         MR. LINDER:  Very well.

24         THE COURT:  Anything else from the defendant's

25  perspective?

1          MR. ANSELL:  No, Your Honor.

2          THE COURT:  All right.

3          (Off the record.)

4          THE COURT:  All right.  The record will reflect that

5    Mr. Brewer and Mr. Ansell have had an opportunity to review

6    the order setting conditions of release, that -- and that

7    Mr. Brewer has signed the order and initialed next to each of

8    the relevant paragraphs.

9          Mr. Brewer, do you -- do you understand the terms

10   and conditions set forth in the Court's order setting

11   conditions of release?

12         THE DEFENDANT:  Yes, I do, sir.

13         THE COURT:  Do you agree to be bound by those terms

14   and conditions?

15         THE DEFENDANT:  Yes.

16         THE COURT:  Do you understand that if you fail to

17   comply with any of those terms and conditions, the United

18   States may seek to have you arrested and detained pending

19   trial?

20         THE DEFENDANT:  Yes.

21         THE COURT:  And you understand that if that happens,

22   if that happens, this is going to come back before me, and I'm

23   going to be significantly inclined to grant their request.  So

24   don't let it happen.

25         THE DEFENDANT:  I won't.

1          THE COURT:  Are there any of the terms and

2     conditions in the order that you like would like me to further

3     explain to you?

4          THE DEFENDANT:  As far as Internet-accessing

5     devices, does a video game device that doesn't have browsing

6     capabilities -- is that included in that?

7          THE COURT:  Probably, yes, but that would be

8     something you should discuss with your supervising officer.

9     And if that becomes a significant impediment, obviously

10    Mr. Ansell can bring that back before the Court.

11         THE DEFENDANT:  Okay.

12         THE COURT:  All right.  Do you have any other

13    conditions you'd like me to further explain?

14         THE DEFENDANT:  No.

15         THE COURT:  All right.  Mr. Ansell, are there any of

16    the terms and conditions that you would like me to further

17    explain to Mr. Brewer?

18         MR. ANSELL:  No, Your Honor.

19         THE COURT:  All right.  As we've discussed, I will

20    be continuing to detain you at the conclusion of this hearing

21    pending the United States' appeal of my decision, but prior to

22    your release, a representative from Pretrial Services will

23    meet with you to communicate with you regarding their

24    expectations and your obligations while on release.  Your next

25    court date will be communicated to you through Mr. Ansell

Vol. 2-138

1   after your release.

2            I'll remind you that if you knowingly fail to appear

3   for any scheduled court date, you could be prosecuted for

4   contempt of court.  You could also be punished pursuant to 18

5   United States Code, Section 3146, for failure to appear,

6   pursuant to which you could be fined and/or imprisoned for up

7   to 10 years.

8            In addition, if you commit any crime while on

9   release, pursuant to 18 United States Code, Section 3147, you

10  could be imprisoned for up to an additional 10 years.

11           I'll remind you it's a crime to attempt to influence

12  or bribe any juror, to attempt to influence or bribe any

13  witness, to retaliate against anyone providing information in

14  your case, or to obstruct justice.  Do you understand,

15  Mr. Brewer?

16           Anything further for the United States?

17           MR. LINDER:  Just a couple of logistical questions,

18  Your Honor.  In light of the appeal, the United States will

19  certainly order a transcript.  Is -- just a couple of things.

20  Does Your Honor -- is Your Honor issuing a written order or is

21  it the oral order?  And, really, we're wondering whether we

22  need to request today's transcript as well as yesterday's.

23           THE COURT:  I'm not intending to issue a written

24  order.

25           MR. LINDER:  Very well.

Vol. 2-139

1              Secondly, the exhibits that were introduced

2    yesterday, should the government file them on the docket or

3    will they be provided to the district court?

4              THE COURT:  We'll transfer them to the district

5    judge.

6              MR. LINDER:  Very well.  Thank you.

7              THE COURT:  You do not need to file them.

8              MR. LINDER:  Thank you.

9              THE COURT:  Anything else for the United States?

10             MR. LINDER:  No, Your Honor.  Thank you.

11             THE COURT:  Anything further for the defendant?

12             MR. ANSELL:  No, Your Honor.  Thank you.

13             THE COURT:  All right.  Then I'll remand the

14   defendant to the custody of the United States Marshals pending

15   the resolution of the United States' appeal of my decision,

16   and we are adjourned.

17             THE COURTROOM DEPUTY:  All rise.

18

19             (Proceedings adjourned at 1:42 p.m.)

20

21

22

23

24

25

Vol. 2-140

1                    CERTIFICATE OF COURT REPORTER

2

3        I, David W. Moxley, hereby certify that the

4   foregoing is a true and correct transcript from

5   reported proceedings in the above-entitled matter.

6

7

8

9   /S/ David W. Moxley_____   August 27, 2018
    DAVID W. MOXLEY, RMR/CRR/CMRS
10  Official Court Reporter
    Southern District of Indiana
11  Indianapolis Division

12

13

14

15

16

17

18

19

20

21

22

23

24

25