UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 1:18-cr-286-TWP-DLP-01 |
| v. | ORDER ON MOTION FOR SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(c)(1)(A) |
| NOLAN BREWER | (COMPASSIONATE RELEASE) |

Upon motion of ☒ the defendant ☐ the Director of the Bureau of Prisons for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A), and after considering the applicable factors provided in 18 U.S.C. § 3553(a) and the applicable policy statements issued by the Sentencing Commission,

IT IS ORDERED that the motion is:

☒ DENIED.

☐ DENIED WITHOUT PREJUDICE.

☐ OTHER:

☒ FACTORS CONSIDERED: See attached opinion.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:18-cr-00286-TWP-DLP |
| ) | |
| NOLAN BREWER, ) | |
| ) | |
| Defendant. ) | |

**ORDER DENYING MOTION FOR COMPASSIONATE RELEASE**

This matter is before the Court on Defendant Nolan Brewer's ("Mr. Brewer") *pro se* Motion for Sentence Reduction pursuant to 18 U.S.C. § 3582(c)(1)(A), that the Court construes as a motion for compassionate release under § 603 of the First Step Act of 2018. (Dkt. 85.) Mr. Brewer seeks immediate release from incarceration due to risk to his health associated with the Coronavirus pandemic. *Id.* Because Mr. Brewer has not shown extraordinary and compelling reasons for a sentence reduction, his motion is **denied**.

## I.     BACKGROUND

In May 2019, the Court sentenced Mr. Brewer to 36 months' imprisonment and 2 years of supervised release after he pled guilty to one count of conspiracy to violate rights, in violation of 18 U.S.C. § 241. (Dkts. 66, 67.) In the course of pleading guilty, Mr. Brewer admitted to, among other things, spray-painting Nazi symbols on a Jewish synagogue in Carmel, Indiana. (*See* Dkt. 76 at 20–32.) He also admitted to using homemade "napalm" to set fire to two areas of the ground near the spray-painted graffiti. *Id.* He admitted that he targeted the synagogue because its members were Jewish and that he intended to scare them. *Id.* Judgment was entered on May 24, 2019. (Dkt. 67.)

On August 13, 2020, Mr. Brewer filed a motion seeking compassionate release under 18 U.S.C. § 3582(c)(1)(A). (Dkt. 83.) The motion without prejudice because it did not show that Defendant was entitled to compassionate release. (Dkt. 84.) The Court informed Mr. Brewer that he could pursue a motion for compassionate release by completing and returning the Court's form compassionate release motion. *Id*. On October 14, 2020, Mr. Brewer completed and returned the Court's form compassionate release motion. (Dkt.85.) That motion is currently pending before the Court.[1]

## II. DISCUSSION

Mr. Brewer is 22 years old. He is currently incarcerated at the Metropolitan Correctional Center in Chicago, Illinois ("MCC Chicago"). As of October 26, 2020, the Bureau of Prisons ("BOP") reports that one inmate at MCC Chicago has an active case of COVID-19; it also reports that 125 inmates have recovered from the virus. The BOP website lists Mr. Brewer's release date as December 22, 2021.

Mr. Brewer seeks immediate release because of conditions created by the COVID-19 pandemic. (Dkt. 85 at 8–9.)[2] He complains about "the unhealthy conditions and absence of rehabilitation at [his] facility," *id.* at 2, noting specifically that the staff at MCC Chicago have not been able to control the spread of the virus and have allowed a "'Petri Dish' like environment" to develop, *id.* at 8. He complains that he is currently housed in a COVID-19 recovery unit and has been living under lockdown conditions since April 2020. *Id.* Although he does not explicitly state in his renewed motion, Mr. Brewer's original motion and supporting documentation show that he

---

[1] The Court concludes that it does not require a response brief from the Government to decide the issues presented by Mr. Brewer's motion.

[2] Citations to this document are to the page numbers electronically "stamped" on the document when it was filed in CM/ECF.

3

contracted COVID-19 while incarcerated at MCC Chicago and tested positive on April 29, 2020. (Dkt. 83 at 1.)  Mr. Brewer did not develop any symptoms, *id.* at 13, and has since tested negative for the virus, (Dkt. 83-2 (negative test result from July 20, 2020).)  He does not base his current motion on any medical diagnosis of his own.  *See* Dkt. 85 at 5 (not answering when asked to list any medical diagnoses that are the basis for his motion).  Instead, he expresses concern about being re-infected with COVID-19.  *See id.* at 8.

Mr. Brewer states that he is afraid because he is housed with violent inmates, alleging that there is a pattern of violence toward vulnerable inmates that was spurred by an attack on fellow inmate R. Kelly.  *Id.*  He complains that staff members at MCC Chicago are neglecting their responsibility to maintain the safety of inmates in their custody.  *Id.*  Mr. Brewer also complains about conditions at MCC Chicago in the wake of the pandemic, noting that being on lockdown means that he has no access to potentially rehabilitative programming and that he is "being held in a cell with 80+ inmates, to be exposed to violent and mentally unstable inmates, unable to access any fresh air or sunlight or observe any social distancing." *Id.* at 9.  He states that he has developed anxiety and depression but that there is no unit team, counselor, or case manager on his floor, and he rarely sees anyone in authority to whom he can address his concerns.  *Id.* at 8.

18 U.S.C. § 3582(c) provides in relevant part:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility,[3] whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without

---

[3] In his original motion, Mr. Brewer stated that he made an administrative request for compassionate release on June 11, 2020.  (Dkt. 83 at 12.)  Because it appears that he made the request more than 30 days ago, the Court may hear his motion. The exhaustion requirement is not, however, jurisdictional. *See United States v. Cox*, No. 4:18-cr-17-TWP-VTW-1, 2020 WL 1923220, at *3 (S.D. Ind. Apr. 21, 2020); *United States v. Jackson*, No. 2:15-cr-00013-JMS-CMM-1, Dkt. 137 (S.D. Ind. Apr. 28, 2020). Thus, even if Mr. Brewer has not exhausted his administrative remedies, the Court may deny his motion on the merits because the face of his motion shows that he is not entitled to relief.

  conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

    **(i)** extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).

Congress directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). It directed that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." *Id*. In response to this directive, the Sentencing Commission promulgated a policy statement regarding compassionate release under § 3582(c), contained in United States Sentencing Guidelines ("U.S.S.G.") § 1B1.13 and the accompanying Application Notes. While that particular policy statement has not yet been updated to reflect that defendants (and not just the BOP) may move for compassionate release,[4] courts have universally turned to U.S.S.G. § 1B1.13 to provide guidance on the "extraordinary and compelling reasons" that may warrant a sentence reduction. *E.g.*, *United States v. Casey*, 2019 WL 1987311, at *1 (W.D. Va. 2019); *United States v. Gutierrez*, 2019 WL 1472320, at *2 (D.N.M. 2019); *United States v. Overcash*, 2019 WL 1472104, at *2-3 (W.D.N.C. 2019). There is no reason to believe, moreover, that the identity of the movant (either the defendant or the BOP) should have any impact on the factors the court should consider.

---

[4] Until December 21, 2018, only the BOP could bring a motion for sentence reduction under § 3582(c)(1)(A). The First Step Act of 2018, which became effective on December 21, 2018, amended § 3582(c)(1)(A) to allow defendants to bring such motions directly, after exhausting administrative remedies. *See* 132 Stat. at 5239 (First Step Act § 603(b)).

5

As provided in § 1B1.13, consistent with the statutory directive in § 3582(c)(1)(A), the compassionate release analysis requires several findings. First, the Court must address whether "[e]xtraordinary and compelling reasons warrant the reduction" and whether the reduction is otherwise "consistent with this policy statement." U.S.S.G. § 1B1.13(1)(A), (3). Second, the Court must determine whether Mr. Brewer is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Finally, the Court must consider the § 3553(a) factors, "to the extent they are applicable." U.S.S.G. § 1B1.13.

Subsections (A)-(C) of Application Note 1 to § 1B1.13 identify three specific "reasons" that qualify as "extraordinary and compelling": (A) terminal illness diagnoses or serious conditions from which a defendant is unlikely to recover and which "substantially diminish[]" the defendant's capacity for self-care in prison; (B) aging-related health decline where a defendant is over 65 years old and has served at least ten years or 75% of his sentence, whichever is less; or (C) certain family circumstances (the death or incapacitation of the caregiver of the defendant's minor child or the incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner). U.S.S.G. § 1B1.13, Application Note 1(A)–(C). Subsection (D) adds a catchall provision for "extraordinary and compelling reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)."[5] *Id.*, Application Note 1(D).

---

[5] The policy statement provides that "[a] reduction under this policy statement may be granted only upon motion by the Director of the Bureau of Prisons." U.S.S.G. Manual § 1B1.13, Application Note 4. Likewise, the catchall provision provides, "As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.*, Application Note 1(D). This policy statement has not been amended since the passage of the First Step Act. Insofar as it states that only the Director of the BOP can bring a motion under § 3582(c)(1)(A), it is directly contradicted by the amended statutory text. Some courts have concluded that the Commission does not have a policy position applicable to motions under § 3582(c)(1)(A)(i) and they have discretion to determine what constitutes an "extraordinary and compelling reason" on a case-by-case basis, looking to the policy statement as helpful, but not dispositive. *See, e.g.*, *United States v. Perdigao*, No. 07-103, 2020 WL 1672322, at *2 (E.D. La. Apr. 2, 2020) (collecting cases). Other courts have held that they must follow the policy statement as it stands and, thus, that the

Mr. Brewer does not suggest that Subsections (A)-(C) of Application Note 1 to § 1B1.13 apply to him. *See* Dkt. 85 at 2. Thus, the question is whether the catchall provision for extraordinary and compelling reasons applies in this case.

The Court concludes that it does not. To the extent Mr. Brewer contends that being infected with COVID-19 is an extraordinary and compelling reason warranting a sentence reduction, the Court disagrees. Mr. Brewer contracted COVID-19 almost six months ago. By his own admission, he remained asymptomatic, and he has submitted medical records showing that he tested negative for the virus three months ago. He does not claim to be suffering from any lingering effects of the virus.[6] Thus, he has not shown extraordinary and compelling reasons warranting a sentence reduction. *See, e.g.*, *United States v. Weatherspoon*, No. 2:11-cr-9-JMS-CMM-07, Dkt. 894 (S.D. Ind. July 7, 2020) (finding no extraordinary and compelling reason where defendant had conditions putting him at risk for severe COVID-19 symptoms and had been hospitalized after testing positive for COVID-19, but had since recovered); *United States v. Wyatt*, No. 3:17-cr-11-RLY-MPB-02, dkt. 165 (S.D. Ind. Sept. 3, 2020) (finding no extraordinary and compelling reason where defendant had conditions putting him at risk for severe COVID-19 symptoms and had tested positive for COVID-19 but remained asymptomatic).

---

Director of the BOP is the ultimate arbiter of what counts as "extraordinary and compelling" under the catchall provision. *See, e.g.*, *United States v. Lynn*, No. 89-0072-WS, 2019 WL 3805349, at *2–4 (S.D. Ala. Aug. 13, 2019). The Court need not resolve that debate, though, because Mr. Brewer's motion is due to be denied even if the Court assumes that the policy statement is not binding and that it has the discretion to determine what constitutes an "extraordinary and compelling reason" for a sentence reduction.

[6] In his original motion, Mr. Brewer provided some statistics about the number of COVID-19 patients who suffer long-term effects from the virus, such as heart, lung, and brain damage. *See* Dkt. 83 at 9–11. He does not repeat that information in his current motion, and the Court does not understand him to be arguing in his current motion that he has suffered long-term damage from his COVID-19 infection. To the extent he does make such an argument, it is speculative, particularly in the absence of any suggestion that he has any symptoms suggesting long-term damage from his admittedly asymptomatic COVID-19 infection.

7

Mr. Brewer's concern about being re-infected with COVID-19 does not change this result. The Court acknowledges that MCC Chicago had an outbreak of COVID-19, but the BOP currently reports that there is one active inmate case and that there are 6 active staff cases. That is, the outbreak currently appears to be largely under control within the inmate population. To the extent Mr. Brewer is contending that he could experience severe symptoms if infected again, his argument is speculative. *See* https://www.cdc.gov/coronavirus/2019-ncov/if-you-are-sick/quarantine.html (last visited Oct. 20, 2020) ("At this time, we have limited information about reinfections with the virus that causes COVID-19."). To date, this Court has declined to find extraordinary and compelling circumstances warranting a sentence reduction when a defendant has had an asymptomatic case of COVID-19—even when that defendant has risk factors for severe symptoms, which Mr. Brewer does not. *See*, *e.g.*, *Wyatt*, No. 3:17-cr-11-RLY-MPB-02, dkt. 165 (S.D. Ind. Sept. 3, 2020); *United States v. Gevirtz*, No. 1:17-cr-68-RLY-MJD-01, dkt. 68 (S.D. Ind. Sept. 14, 2020); *United States v. Young*, No. 1:10-cr-3-SEB-DML-17, dkt. 1540 (S.D. Ind. July 27, 2020).

Mr. Brewer's complaints about the conditions at MCC Chicago (including the lack of programming, the lack of access to mental health care, and fear about attacks from violent inmates) also do not change this result. Such complaints suggest that he may wish to consider filing in his district of incarceration an action under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), or a claim for injunctive relief. Given the availability of alternative relief, such complaints do not constitute an extraordinary and compelling reason warranting a sentence reduction. Similarly, Mr. Brewer's complaints about MCC Chicago's handling of the COVID-19 pandemic might conceivably support a claim for monetary damages, but they do not warrant releasing him

from his sentence early.[7]  In short, Mr. Brewer has not shown an extraordinary and compelling reason warranting a sentence reduction.

Because the Court has determined no extraordinary and compelling reason warranting a sentence reduction exist, it will only briefly address the danger to the community and that the sentencing factors in § 3553 do not favor release.

Fear is what Mr. Brewer and his co-conspirator wife intended.  Mr. Brewer admitted at his sentencing hearing that he had come to believe in Nazism.  He admired Adolf Hitler, wore Nazi paraphernalia, and spoke of white supremacy.  He and his wife wanted to send a message, so they purchased spray paint and ingredients to build overpressure explosive devices and concoct homemade "napalm".  In the middle of the night, they drove over 50 miles to a synagogue.  They parked a mile away to avoid detection and carried their supplies in a backpack, planning to break into the synagogue and set it on fire.  In the end, the synagogue's security system deterred them from breaking in, so they sprayed their message on the walls of a nearby enclosure and started a fire on synagogue property. The next day, while the congregation, and indeed the entire community, took notice in shock and disgust, Mr. Brewer bragged about what he had done.  He showed his friends photographs and gloated about the national news coverage.  And, more than two weeks later, when arrested by the Federal Bureau of Investigation, he still had the spray paint, explosive devices, and other tools in the trunk of his car.  He asserted that he had been radicalized to Nazism by his wife.  By the time of his sentencing hearing, Mr. Brewer expressed his remorse and claimed to have disavowed the beliefs that caused him to commit this offense. Regardless, fire

---

[7] Mr. Brewer's original motion included other complaints about conditions at MCC Chicago that were not repeated in his current motion (for example, complaints about policy violations and poor medical care). *See generally* Dkt. 83. To the extent those arguments are not included in his current motion, the Court considers them to be abandoned. Regardless, such conditions do not constitute extraordinary and compelling reasons warranting a sentence reduction. Like the complaints he makes in his current motion about the conditions at MCC Chicago, the complaints included in his original motion could conceivably support a civil suit, but they do not represent a reason to release him from his sentence early.

9

and Nazism are threatening symbols and the time Mr. Brewer has spent thus far in custody is insufficient to address the danger his crime imparts to the community.

Regarding the 3553(a) factors, Mr. Brewer's hateful conduct demands a meaningful sentence of imprisonment, not only to reflect the seriousness of the crime, promote respect for the law, to provide just punishment, and perhaps even more critically, to promote deterrence. For these additional reasons, the 3553(a) factors do not warrant release.

### III. CONCLUSION

For the reasons stated above, Mr. Brewer's Motion for Compassionate Release, Dkt. [85], is **DENIED**. The **Clerk** is **directed** to enclose a prisoner civil rights complaint form with Mr. Brewer's copy of this Order.

**SO ORDERED.**

Date: 10/26/2020

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Nolan Brewer, Reg. No. 16544-028
Metropolitan Correctional Center
71 West Van Buren St.
Chicago, Illinois 60605

Nicholas J. Linder
UNITED STATES ATTORNEY'S OFFICE
nick.linder@usdoj.gov